# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVA MEDIC and JOHNNY MEDIC, H/W<br>822 Broad Street<br>Burlington, NJ 08016<br><br>and<br><br>H.M., a minor, by and through her parents and natural guardians, AVA MEDIC and JOHNNY MEDIC<br>822 Broad Street<br>Burlington, NJ 08016<br><br>               Plaintiffs<br><br>   v.<br><br>BATH & BODY WORKS, LLC<br>Three Limited Parkway<br>Columbus, OH 43230<br><br>and<br><br>BATH & BODY WORKS, INC.<br>Three Limited Parkway<br>Columbus, OH 43230<br><br>and<br><br>MAYFIELD CONSUMER PRODUCTS, LLC<br>22 Rifle Trail<br>Hickory, KY 42051<br><br>And<br><br>JOHN DOE CORPORATION (1–5)<br><br>               Defendants | Docket No.:<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

## THE PARTIES

1.  Plaintiffs Ava Medic ("Ava") and Johnny Medic ("Johnny") are married adult citizens of the State of New Jersey who currently reside at 822 Broad Street, Burlington, New Jersey 08016.

2.  Plaintiff H.M., daughter of Ava and Johnny, is a minor who currently resides at 822 Broad Street, Burlington, New Jersey 08016.[1]

3.  Defendant Bath & Body Works, LLC is a Delaware limited liability company with Retail Store Operations, Inc. (a Delaware corporation) as its sole member (upon information and belief). It has a principal place of business located at Three Limited Parkway, Columbus, Ohio 43230 and is registered to do business in the Commonwealth of Pennsylvania.

4.  Defendant Bath & Body Works, Inc. is a Delaware corporation with a principal place of business located at Three Limited Parkway, Columbus, Ohio 43230 and, upon information and belief, is the parent of Bath & Body Works, LLC.  Bath & Body Works, LLC and Bath & Body Works, Inc. are collectively referred to hereinafter as "Bath & Body".

5.  Defendant Mayfield Consumer Products, LLC ("Mayfield") is a Kentucky limited liability company with its principal place of business located at 22 Rifle Trail, Hickory, Kentucky 42051.  Upon information and belief, Defendant Mayfield has one member: the Van DeVenter Irrevocable Trust (the "Trust").  Willow Street Trust Company of Wyoming, LLC ("Willow Street") serves as trustee of the Trust.  Willow Street is a Wyoming limited liability company and Wyoming chartered public trust company with its principal place of business in Jackson, Wyoming.  The sole member of Willow Street is WSG Holdco, LLC ("Holdco"), a Wyoming limited liability company with its principal place of business in Jackson, Wyoming.  Holdco is

---

[1] Plaintiffs Ava Medic, Johnny Medic, and H.M. are hereinafter referred to collectively as "Plaintiffs" or the "Medic Family."

ultimately owned and controlled by six members, all of whom are citizens of Wyoming: Phillip Harrington, a citizen and resident of the State of Wyoming; Barbara Hoeft, a citizen and resident of the State of Wyoming; Beatriz Iriondo (aka Betty Andrikopoulos), a citizen and resident of the State of Wyoming; Patricia Overdyke, a citizen and resident of the State of Wyoming via a single-member Wyoming limited liability company; Laurent Roux, a citizen and resident of the State of Wyoming via a single-member Wyoming limited liability company; and Scott Weaver, a citizen and resident of the State of Wyoming via a single-member Wyoming limited liability company.

6. Defendants John Doe Corporation (1–5) are the entities currently incapable of being specifically identified after conducting a reasonable search, but which designed, manufactured, assembled, tested, inspected, marketed, maintained, serviced, distributed and/or sold the candle product at issue in this lawsuit. Plaintiffs expect to learn the name of these additional entities through formal discovery and will promptly take steps to substitute actual names for fictitious names.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8. The Court has general personal jurisdiction over Defendant Bath & Body Works, LLC because the company is registered to do business in Pennsylvania, consenting to personal jurisdiction here. *Mallory v. Norfolk So. Railway Co.*, 600 U.S. 122 (2023). The Court has specific personal jurisdiction over Defendants Bath & Body Works, LLC; Bath & Body Works, Inc.; and Mayfield because this action arises out of their respective distribution and manufacture

3

of the candle product that injured Plaintiffs. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351 (2021).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to Plaintiffs' claims took place here, namely the distribution and sale of the candle product that injured Plaintiffs.

## THE PRODUCT

10. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

11. The product involved in this Complaint includes the candle described in detail in Paragraph 12 and all of its components, including but not limited to the wax, scented oil, wicks, and glass container, and all of its warnings, instructions, and decals (hereinafter the "subject candle").

## THE INCIDENT

12. On November 29, 2022, Tammy Paschall-Martin, an acquaintance of Ava, purchased a three-wick Aromatherapy Eucalyptus Spearmint scented candle from Defendant Bath & Body, either by ordering it from bathandbodyworks.com and having the subject candle shipped to her home in Allentown, Pennsylvania or by buying the subject candle in person at a Bath & Body store in Lehigh County or Northampton County, Pennsylvania. The subject candle was identical in appearance to one still available for purchase on Defendant Bath & Body's website:



13.     Upon information and belief, the subject candle was manufactured by Defendant Mayfield and distributed and sold by Defendant Bath & Body.

14.     Upon information and belief, Defendant Bath & Body began selling such three-wick candles in 2005 and has since sold these candles in over 100 different scents. Defendant Bath & Body first introduced the Eucalyptus Spearmint three-wick candle in 2011, and it remains one of Defendant Bath & Body's more popular scents.

15.     When Ava hosted a housewarming party at the Medic Family's new home in New Jersey on December 18, 2022, Paschall-Martin attended the party and gifted Ava with the subject candle.

16.     Ava first lit the subject candle that very evening, without incident, sometime between 6:00 pm and 7:00 pm and for no longer than an hour. When she was done, she extinguished the flame and placed the lid back on the candle.

17.     Approximately six weeks later, on February 3, 2023, Ava lit the candle for a second time, at about 9:00 pm. With Johnny working the second shift an hour away, H.M. playing on a

laptop, and two younger daughters asleep in their bedroom with the family's puppy, Ava placed the subject candle on top of the dresser in her own bedroom and, quite foreseeably, laid down to rest. Within an hour, she awoke to the sound of crackling coming from the dresser top area. Concerned at the peculiar sound in the vicinity of the subject candle, she walked toward the dresser to investigate.

18. As Ava approached the dresser, the glass container holding the subject candle cracked. Worried about the subject candle igniting a housefire, Ava attempted to blow out the flame. Due to the defective and unreasonably dangerous condition of the subject candle, it suddenly exploded—its flame shooting up several feet to the ceiling, burning her face, and lighting her hair on fire.

19. Terrified, Ava tried frantically to blow out the flame, which was simply too strong. With her hair burning and falling out in clumps, and panicking terribly, she ran out into the hallway. Video footage from a home-security camera captures the brightness of flames in the bedroom followed by Ava fleeing into the hallway (and audibly screaming):

*The dark hallway outside of the bedroom with the fire burning Ava inside.*



*Ava entering the hallway with her hair on fire.*



*Ava staggering down the hallway with her hair still on fire.*



20.     Hearing her mother's desperate cries for help, H.M. emerged from her own bedroom and rushed to her mother's aid in another room. The image below shows H.M. opening her bedroom door to come to her mother's assistance.



21.     Outside the view of the camera in another room, working heroically to put out the fireball engulfing her mother, teenaged H.M. tamped the fire on Ava's head with her hands—burning them in the process along with her pants—to no avail.  Finally, noticing a mop bucket miraculously nearby, Ava dunked her head in the bucket of water, putting out the fire in her hair and likely saving her life.

22.     Surging with adrenaline, Ava then returned to her bedroom and put out the fire with the water still remaining in the mop bucket, perhaps saving the Medic Family's home and, most importantly, her children.  With the fires put out, and still coursing with adrenaline, Ava drove herself to a nearby hospital, where she was treated for her injuries. Photographs of the aftermath—the burned dresser, ceiling, floor, and bed—show the extent of the fire caused by the exploding subject candle.





23. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject candle, Ava sustained severe and permanent injuries to her body, including but not limited to significant burns, resultant disfigurement, and Post Traumatic Stress

9

Disorder for which she seeks recovery in the form of compensatory and punitive damages from Defendants to the fullest extent permitted by law.

24. The severe and permanent injuries sustained by Ava on February 3, 2023, precluded her from working for over a month and may very well preclude her from working in the future, for which she now seeks recovery from Defendants to the fullest extent permitted by law insofar as lost earnings and lost earning capacity.

25. The severe and permanent injuries sustained by Ava on February 3, 2023, have resulted in extensive past medical care, will result in future medical care, and she seeks recovery for these past and future medical expenses from Defendants to the fullest extent permitted by law.

26. The severe and permanent injuries sustained by Ava on February 3, 2023, have resulted in scarring, deformity, pain and suffering, mental anguish, humiliation, embarrassment, loss of well-being, disfigurement, severe restrictions on her ability to engage in normal activities, and inability to pursue and enjoy the normal and ordinary pleasures of life, for which she now seeks recovery from Defendants to the fullest extent permitted by law.

27. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject candle, Johnny has suffered a significant loss of care, comfort, consortium and services of his wife for which he now seeks recovery from Defendants to the fullest extent permitted by law.

28. In addition, their daughter, Plaintiff H.M., has suffered severe emotional distress and physical manifestations of injury due to her contemporaneous observation of her mother's catastrophic injury, for which she also seeks recovery from Defendants to the fullest extent permitted by law.

## OTHER FIRES INVOLVING BATH & BODY CANDLES

29. According to reports in the news media, the horrific ordeal endured by the Medic Family is just one of a host of similar incidents around the country that have occurred from exploding candles manufactured and distributed by Defendant Bath & Body. *See, e.g.*, Marissa Bagg, "South Florida Woman Shares Warning After Candle Catches Fire Inside Home," NBC 6 South Florida, nbcmiami.com, https://www.nbcmiami.com/news/local/south-florida-woman-shares-warning-after-candle-explodes-inside-home/2380581/ (published Feb. 10, 2021 and last visited Jan. 15, 2025); Savannah Levins, "NC Woman Warning Others After Candle Goes Up in Flames," WCNC Charlotte, wcnc.com, https://www.wcnc.com/article/features/nc-woman-warning-others-after-candle-goes-up-in-flames/275-f56cf27d-72ca-46f4-b44d-63bdb3179513 (published Jan. 15, 2020 and last visited Jan. 15, 2025).

30. Based upon information and belief, as alleged by other injured victims: (*i*) Defendant Bath & Body had received more than one-thousand direct-contact complaints of flashover incidents with its candles prior to February 3, 2023; (*ii*) numerous other complaints were made by customers to the Consumer Product Safety Commission; and (*iii*) internal reporting at Defendant Bath & Body apparently shows that flashover fires with 14.5-ounce, three-wick candles are occurring at a rate of once every day-and-a-half.

31. Not surprisingly, then, Defendant Bath & Body's exploding candles have given rise to a number of lawsuits, including in the Commonwealth of Pennsylvania. *See, e.g.*, Nicholas Malfitano, "Man's Suit Against Bath & Body Works Over Exploding Candle to be Resolved in Arbitration," *Pennsylvania Record*, Jan. 10, 2024, *available at* https://pennrecord.com/stories/653627148-man-s-suit-against-bath-body-works-over-exploding-candle-to-be-resolved-in-arbitration (last visited Jan. 15, 2025). Indeed, as of early 2023, there

11

were already at least nine lawsuits arising from the exploding candles of Defendant Bath & Body:

- *Adams v. Bath and Body Works, Inc.*, 358 Ill. App.3d 387 (Ill. App. Ct. 1st Dist. 2005) (disposition unknown);

- *Dellavecchio v. Slatkin & Co., et al.*, No. 13-CV-1145 (D.N.J.) (resolved by settlement on or about July 17, 2013);

- *Marte v. Bath & Body Works, LLC*, No. 2:13-CV-139 (D.N.J.) (resolved by settlement on or about June 30, 2014);

- *Crystal Lakes v. Bath & Body Works, LLC*, No. 2:16-cv-2989 (E.D. Cal.) (resolved by settlement on or about April 5, 2024);

- *Mellette v. Bath & Body Works, LLC*, No. 8:17-cv-2999 (D. Md. 2017) (resolved by settlement on or about July 9, 2019);

- *Rodriques v. Bath & Body Works, LLC*, No. 1:17-cv-02480 (N.D. Ga.) (voluntarily dismissed; settlement status unknown);

- *Brawley, et al. v. Bath & Body Works LLC, et al.*, No. 3:18-cv-02098 (N.D. Tex.) (resolved by settlement on or about January 10, 2020):

- *Melendez v. Bath & Body Works, LLC*, No. 1:22-cv-01869 (S.D.N.Y.) (resolved by settlement on or about October 11, 2024); and

- *Mastro v. Bath & Body Works, L.L.C.*, No. 2:23-cv-02550 (E.D. Pa.) (resolved by arbitration on or about April 1, 2024).

32. Upon information and belief, Defendant Bath & Body's three-wick candles (like the subject candle) lack the proper oil-wax ratio, and the fragrance oil has a lower flash point than the base wax. Without a homogenous mix of oil and wax, pockets of the oil develop in the candle causing high flammability alongside improperly placed wicks causing high flames. When a burning wick reaches a pocket of the highly flammable oil, an unexpected flare and flashover occur, often resulting in a fire.

33. Upon information and belief, Defendant Bath & Body's three-wick candles (like the subject candle) are designed with wicks closely placed within a confined glass opening, rendering them prone to excessive flaring and flashover, often resulting in a fire.

## COUNT I

### STRICT LIABILITY
### PLAINTIFF AVA MEDIC v. ALL DEFENDANTS

34. Plaintiffs incorporate by reference all of the above paragraphs as if fully set forth herein.

35. Defendants are in the business of manufacturing, designing, testing, assembling, marketing, distributing, and selling candles, including the subject candle.

36. The subject candle was defective and unreasonably dangerous to the ultimate users or consumers, including Ava, from both a consumer expectation and a risk-utility perspective when it was designed, manufactured, tested, assembled, marketed, distributed, and/or sold by Defendants for reasons including but not limited to the following:

   a. the subject candle was defective and unreasonably dangerous because its design, manufacturing, testing, assembly, inspection, marketing, distribution, and selling process allowed the subject candle to have an improper oil-wax ratio, causing flare, flashover, and fire;

   b. the subject candle was defective and unreasonably dangerous because its design, manufacturing, testing, assembly, inspection, marketing, distribution, and selling process allowed the subject candle to have three wicks closely placed within a confined glass opening, causing flare, flashover, and fire;

   c. the subject candle was defective and unreasonably dangerous because it was neither designed, manufactured, tested, assembled, distributed, nor sold with an adequate glass container, which would prevent cracking and/or shattering in the event of a flare, flashover, or fire;

   d. the subject candle was defective and unreasonably dangerous because the product failed to meet all applicable and reasonable safety standards

13

      including but not limited to internal standards and other reasonable standards;

  e. the subject candle was generally and defective and unreasonably dangerous in its design, manufacture, assembly, and warnings because it failed to provide adequate protection to users, consumers, and others (including Ava) when being used as advertised and marketed (or in a reasonably foreseeable manner), and was furnished without adequate safety warnings; and

  f. the subject candle was defective and unreasonably dangerous due to the inadequacy or absence of warning stickers, placards, or any proper documentation, or notice, to alert users, consumers, and others (including Ava) regarding all of the hazardous conditions, as stated above.

37. On February 3, 2023, the subject candle and all of its component parts were substantially unchanged from their condition when originally distributed by Defendants.

38. For the reasons set forth above, the subject candle was unreasonably defective and dangerous to foreseeable users and consumers, including Ava, who was interacting with the subject candle in an ordinary and foreseeable manner.

39. The defects described above directly and proximately caused Ava's catastrophic and permanent injuries, in that they directly and in natural and continuous sequence produced or contributed substantially to Ava's injuries and those of her husband and daughter.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $150,0000, together with lawful interest, costs, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT II

### NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS
### PLAINTIFF AVA MEDIC v. ALL DEFENDANTS

40. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

41. Defendants knew or in the exercise of due care should have known that the subject candle would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable risk of harm to users, consumers, and others in the vicinity of the subject candle, including, but not limited, to Ava.

42. Defendants were under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, market, distribute, and/or sell the subject candle in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly under ordinary circumstances would come into contact with the subject candle, including but not limited to Ava.

43. Defendants breached their duty by negligently, grossly, and recklessly designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to adequately warn, marketing, distributing and/or selling the subject candle when it was not in a reasonably safe condition for foreseeable use for reasons including, but not limited to, the following:

    a. failing to properly design, manufacture, test, assemble, inspect, market, distribute, and sell the subject candle in a manner that avoided an improper oil-wax ratio, causing flare, flashover, and fire;

    b. failing to properly design, manufacture, test, assemble, inspect, market, distribute, and sell the subject candle with wicks properly placed, spaced, and adjusted to the size of the glass container, to mitigate against flare, flashover, and fire;

    c. failing to properly design, manufacture, test, assemble, inspect, market, distribute, and sell the subject candle with an adequate glass container, which would prevent cracking and/or shattering in the event of a flare, flashover, or fire;

    d. failing to properly design, manufacture, test, assemble, inspect, market, distribute, and sell the subject candle in a manner that met all applicable and reasonable safety standards including but not limited to internal standards and other reasonable standards;

    e.    failing to properly design, manufacture, test, assemble, inspect, market, distribute, and sell the subject candle in a manner that provided adequate protection to users, consumers, and others (including Ava) when being used as advertised and marketed (or in a reasonably foreseeable manner), and failing to properly furnish the subject candle with adequate safety warnings;

    f.    failing to properly design, manufacture, test, assemble, inspect, market, distribute, and sell the subject candle with adequate warning stickers, placards, or any proper documentation, or notice, to alert users, consumers, and others (including Ava) regarding all of the hazardous conditions, as stated above;

    g.    failing to properly report to the Consumer Product Safety Commission and/or recall the subject candle after gaining knowledge of other similar incidents and complaints related to the hazardous conditions of the subject candle, as stated above; and

    h.    failing to notify the public, including consumers such as Tammy Paschall-Martin and users such as Ava, of the hazardous conditions of the subject candle, as stated above;

44. The negligence, gross negligence, and recklessness described above directly and proximately caused Ava's catastrophic injuries, in that it directly and in natural and continuous sequence produced or contributed substantially to her injuries and those of her husband and daughter.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $150,0000, together with lawful interest, costs, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT III

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF H.M. v. ALL DEFENDANTS

45. Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

46. At all times relevant hereto, H.M. was the daughter of Ava (and Johnny), who was catastrophically injured in the fire caused by the subject candle.

47. When the fire occurred, H.M. was forced to contemporaneously observe Defendants' negligence, gross negligence, and recklessness, as described herein, catastrophically injuring her mother, Ava.

48. H.M. was physically impacted by the fire when she attempted to put it out, and was unquestionably within the zone of danger of the fire that catastrophically injured her mother, Ava.

49. H.M.'s own experience and the shock and horror of witnessing her mother, Ava, be immersed in flames and sustain devastating injuries as described herein as the direct and proximate result of Defendants' unreasonably dangerous and defective product and other liability producing conduct, as aforesaid, caused H.M. to sustain severe emotional and psychological injuries, which are ongoing and with physical manifestations, the full extent of which have yet to be realized.

50. It was foreseeable to Defendants that their negligence, gross negligence, and/or recklessness would result in severe emotional and psychological trauma and distress to H.M. by virtue of her relationship to Ava upon her contemporaneous observation of the fire and causing catastrophic injuries to her mother, Ava.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $150,0000, together with lawful interest, costs, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT IV

### LOSS OF CONSORTIUM
### PLAINTIFF JOHNNY MEDIC v. ALL DEFENDANTS

51. Plaintiffs incorporate by reference all the above paragraphs as if set forth fully herein.

52. At all relevant times, Ava and Johnny were married and remain married.

53. As a direct result of Ava's severe and permanent injuries, which were caused on February 3, 2023, by Defendants' strict liability, negligence, gross negligence, and recklessness, Johnny has been and will continue to be deprived of the care, comfort, consortium, and services of his wife.

54. Accordingly, Johnny seeks all recoverable loss of consortium damages stemming from or relating to the February 3, 2023, incident.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $150,0000, together with lawful interest, costs, attorneys' fees, and such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

In accordance with the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all counts and issues raised herein.

                              **EISENBERG, ROTHWEILER,**
                              **WINKLER, EISENBERG & JECK, PC**

By:   /s/ Nancy J. Winkler
        NANCY J. WINKLER, ESQ.
        TODD A. SCHOENHAUS, ESQ.
        STEPHAN A. CORNELL, ESQ.
        1634 Spruce Street
        Philadelphia, PA 19103
        (215) 546-6636

Dated: January 30, 2025                *Attorneys for Plaintiffs*